IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERENCE W. PARKER, | ) | Case No. 4:18 cv 2496 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| LYNEAL WAINWRIGHT, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Petitioner Terence W. Parker[1], an Ohio prisoner serving an aggregate sentence of twelve-

and one-half years after having been convicted of robbery, intimidation of a witness, menacing

by stalking and disrupting public service, seeks a writ of habeas corpus under 28 U.S.C. § 2254.

Parker challenges the constitutionality of his convictions and sentences in *State v. Parker,* Case

No. 15 CR 548 (Mahoning County Court of Common Pleas), claiming he was deprived of his

right of confrontation, that there was insufficient evidence to convict him of robbery and that his

robbery convictions were against the manifest weight of the evidence.[2]  ECF Doc. 1.

Respondent, Lyneal Wainwright,[3] warden of the Marion Correctional Institution, Marion, Ohio,

---

[1] Petitioner's name is consistently spelled "Terrence" W. Parker in the state court record and in the
records maintained by the Ohio Dept. of Rehabilitation and Correction (ODRC Inmate Record)(Last
visited April 3, 2020).  Parker spells his first name Terence in his petition.
[2] This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a
report and recommendation on Parker's petition or other case dispositive motions.
[3] Parker moved to amend his petition (ECF Doc. 6) to substitute Warden Wainwright as the respondent in
place of the State of Ohio against whom his petition was filed initially.  The court granted the motion on

filed a return of writ on December 14, 2018.  ECF Doc. 8.  Parker filed a traverse on January 18, 2019.  ECF Doc. 9.

Because Parker's Ground One claim lacks merit and/or raises only a noncognizable manifest weight of the evidence claim, and because his Ground Two claim has been procedurally defaulted and lacks merit, I recommend that the Court DISMISS each claim and DENY Parker's petition for writ of habeas corpus.

## II.     Procedural History

### A.     State Conviction

On June 25, 2015, a Mahoning County, Ohio grand jury returned a two-count indictment against Parker charging him with Robbery, in violation of Ohio Rev. Code § 2911.02(A)(1)(b), a second-degree felony (Count One) and Felonious Assault, in violation of Ohio Rev. Code § 2903.11(A)(2)(d), a second-degree felony (Count Two).  ECF Doc. 8-1 at 4.  Parker appeared with retained counsel, was ordered to be held without bond, and pleaded not guilty.  ECF Doc. 8-1 at 184-185.  The grand jury returned a nine-count superseding indictment on September 3, 2015, charging Parker with two counts of felonious assault in violation of Ohio Rev. Code § 2903.11 (A)(2)(d), second-degree felonies (Counts One and Two); one count of Aggravated Robbery in violation of Ohio Rev. Code § 2911.01(A)(1)(c), a first-degree felony (Count Three); one count of Robbery in violation of Ohio Rev. Code § 2911.02(A)(1)(b), a second degree felony (Count Four); one count of Robbery in violation of Ohio Rev. Code § 2911.02(A)(2)(b), a second-degree felony (Count Five); one count of Intimidation of Victim in violation of Ohio Rev. Code § 2921.04(B)(1)(d), a third-degree felony (Count Six); one count of Intimidation of Victim in violation of Ohio Rev. Code § 2921.04(B)(2)(d), a third-degree felony (Count Seven);

_____

March 8, 2019.  ECF Doc. 10.  I will refer to the respondent as Warden Wainwright rather than the State of Ohio.

one count of Menacing by Stalking in violation of Ohio Rev. Code § 2903.211(A)(1)(b)(2)(e), a fourth-degree felony (Count Eight); and one count of Disrupting Public Services in violation of Ohio Rev. Code § 2909.04(A)(1)(c), a fourth-degree felony (Count Nine).

The case proceeded to the date scheduled for jury trial, September 15, 2015.  Before trial commenced, the trial court granted the state's motion to amend Count Seven of the superseding indictment from Intimidation of Victim to Intimidation of Witness, consistent with the language of the actual charge.  ECF Doc. 8-1 at 10.  On September 16, 2015, the jury returned verdicts finding Parker NOT GUILTY of the charges in Counts One (Felonious Assault), Two (Felonious Assault), Three (Aggravated Robbery) and Six (Intimidation of Victim).  The jury found Parker GUILTY of the charges Count Four (Robbery), Five (Robbery), Seven (Intimidation of Witness), Eight (Menacing by Stalking, with the additional finding that Parker had a history of violence toward the victim or any other person), and Nine (Disrupting Public Service).  ECF Doc. 8-1 at 11.

The trial court conducted a sentencing hearing on September 17. 2015.  Upon stipulation of the parties, the trial court merged the Robbery charges in Count Four and Count Five, and the state elected to have Parker sentenced on Count Four.  ECF Doc. 8-1 at 14.  After hearing from the state, the defendant, and a victim, the trial court ordered Parker to serve an eight-year prison term on the Count Four Robbery charge, a thirty-six-month term on the Count Seven Intimidation of Witness Charge, an eighteen month term on the Count Eight Menacing by Stalking charge, and an eighteen-month term on the Count Nine Disrupting Public Services charge.  Parker's Count Eight and Count Nine sentences were ordered to be served concurrently to one another; all other sentences were to be served consecutively.  Parker's aggregate sentence was twelve-and-one-half years' imprisonment.  Parker was notified he would be required to

serve three years of mandatory post release control after his release from prison.  ECF Doc. 8-1 at 15-16.

**B.      Direct Appeal**

Parker's trial court counsel filed a notice of appeal to the Ohio Court of Appeals on September 29. 2015.  ECF Doc. 8-1 at 17.  Parker, represented by new counsel, filed his merit brief on March 24, 2016.  Parker asserted eight assignments of error:

I.    Appellant's convictions for robbery as contained in counts 4 and 5 were based on insufficient evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflicted harm thereby requiring reversal.

II.   Appellant's convictions for robbery as contained in counts 4 and 5 were against the manifest weight of the evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflicted harm thereby requiring reversal.

III.  Appellant's convictions for aggravated menacing and robbery (under either count 4 or 5) are allied offenses of similar import thereby depriving the trial court from imposing a sentence on both counts pursuant to R.C. 2941.25.

IV.   The convictions for robbery (under either counts 4 or 5) and disrupting public services are allied offenses of similar import thereby depriving the trial court from imposing a sentence on both counts pursuant to R.C. 2941.25.

V.    Appellant was denied the effective assistance of counsel in that counsel failed to argue for merger of disrupting public service and/or menacing by stalking with the convictions for robbery.

VI.   The conviction of intimidation of a witness was based on insufficient evidence as the State offered no proof that a criminal action was pending at the time of the alleged threat or that a threat was made and/or attempted.

VII.  The conviction for intimidation of a witness was against the manifest weight of the evidence as there is no allegation of a threat being made against the witness.

4

VIII.   Appellant was prejudiced by the joinder of the menacing by stalking count with all other counts as this permitted the state to introduce evidence of appellant's criminal history without appellant testifying.

ECF Doc. 8-1 at 20-21.  The state filed an appellee brief on July 19, 2016.  ECF Doc. 8-1 at 43.

The Ohio Court of Appeals affirmed Parker's convictions and sentences in a journal entry and opinion filed on June 16, 2017.

Parker filed a *pro se* notice of appeal on July 21, 2017.  ECF Doc. 8-1 at 106.  Parker's *pro se* Memorandum in Support of Jurisdiction asserted four propositions of law:

[Proposed] Proposition of Law No. 1:  Whether, Appellant's constitutional rights of the 4th, 5th, 6th, 8th & 14th Sec.1 Amendment Clauses were denied, deprived and/or prejudiced. Where defense counsel ineffectively allowed a breakdown in the adversarial testing process by and through allowing Appellant's convictions for Robbery as contained in counts 4 & 5, were based an insufficient evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflict harm thereby requiring reversal.

[Proposed] Proposition of Law No. 2:  Whether, Appellant's constitutional rights of the 4th, 5th, 6th, 8th & 14th Sec. l Amendment Clauses were denied, deprived and/or prejudiced. Where defense counsel ineffectively allowed a breakdown in the adversarial testing process by and through allowing Appellant's convictions for Robbery as contained in counts 4 & 5, were against the manifest weight of the evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflict harm thereby requiring reversal.

[Proposed] Proposition of Law No. 3:  Whether, Appellant's constitutional rights of the 4th, 5th, 6th, 8th & 14th Sec.1 Amendment Clauses were denied, deprived and/or prejudiced. Where defense counsel ineffectively allowed a breakdown in the adversarial testing process by and through allowing Appellant's convictions for Aggregated Menacing and Robbery (under counts 4 & 5) are allied offenses of similar import thereby depriving the trial court from imposing a sentence on both counts pursuant to R.C. 2941.25 requiring reversal.

[Proposed] Proposition of Law No. 4:  Whether, Appellant's constitutional rights of the 4th, 5th, 6th, 8th & 14th Sec.1 Amendment Clauses were denied, deprived and/or prejudiced. Where defense counsel ineffectively allowed a breakdown in the adversarial testing process by and through allowing Appellant's convictions for Robbery as contained in counts 4 & 5, disrupting Public Services are allied

offenses of similar import thereby depriving the trial court from imposing a
sentence on both counts pursuant to R.C. 2921.25 requiring reversal.

ECF Doc. 8-1 at 109.  The state filed nothing in response to Parker's memorandum.  ECF Doc.

8-1 at 200.  The Supreme Court of Ohio declined to accept jurisdiction of the appeal. *State v.*

*Parker*, 151 Ohio St.3d 1455, 2017-Ohio-8842, 2017 (Dec. 6, 2017); ECF Doc. 8-1 at 161.

Parker did not appeal that decision to the United States Supreme Court.

### C.     New Trial Motion

While his request for Ohio Supreme Court jurisdiction was pending, Parker filed a *pro se*

Declaration on August 1, 2017 requesting that the trial court provide him with documents: his

bill of particulars, and "the Discovery filed by Prosecution."  ECF Doc. 8-1 at 162.  The trial

court denied the request by an entry dated September 8, 2017.  ECF Doc. 8-1 at 163.

Ten months later, Parker filed a *pro se* motion for new trial – on June 1, 2018.  ECF Doc.

8-1 at 164.  Parker's motion asserted that he was entitled to a new trial – at least on the

intimidation of witness charge – because the prosecution allegedly withheld text message

evidence relevant to the issue of whether Parker intimidated a witness.  He asserted his

entitlement to a new trial based on newly discovered evidence under the standards of Ohio Crim.

R. 33(A).  ECF Doc. 8-1 at 170.  The state filed an opposition brief on November 13, 2018.  ECF

Doc. 8-1 at 177.  The state argued Parker's motion was untimely because it was filed more than

120 days after the day on which the jury returned verdicts, as required by Crim. R. 33(A).  And it

argued that Parker neither sought nor was granted leave to file his motion for new trial based on

clear and convincing evidence that he was unavoidably prevented from discovering the evidence

within the 120-day period.  The state contended Parker could not make that showing because the

evidence he claimed was newly discovered had actually been produced to him in discovery.

ECF Doc. 8-1 at 181.

6

On December 5, 2018, the court issued a judgment entry overruling the motion for new trial without opinion.  ECF Doc. 8-1 at 183.  Parker did not appeal this ruling.

## III.    Petition for Writ of Habeas Corpus

On October 29, 2018 Parker filed his *pro se* petition for writ of habeas corpus in this court.  ECF Doc. 1.  Normally, applying the prison mailbox rule,[4] the petition would be deemed to have been filed on the date Parker placed it in the prison mail system.  However, Parker did not list the date on which he mailed the document; he dated it October 15, 2018 and there is a postage stamp on the envelope dated October 25, 2018.  ECF Doc. 1 at 16.  Parker's petition was filed less than one year after the Ohio Supreme Court declined jurisdiction over his direct appeal.

Parker's petition raised two grounds for relief:

**A.  Ground One**: Petitioner constitutional rights of the 6th and 14th Sec. 1 Amendment clauses were violated. The conviction for robbery as contained in counts 4 and 5 were based on manifest weight/insufficient evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflicted harm.

Petitioner incorporates by reference here, manifest weight of evidence for counts 4 and 5 violations of R.C. 2911.02(A)(1)(B), R.C. 2911.02(A)(2)(B) (robbery), and insufficient evidence.

With respect to manifest weight of evidence to counts 4 and 5 robbery was the damaging of the cell phone not a theft and the taking of the cash was not done by force/threat or was in the possession of a weapon. Petitioner further states that under the manifest weight standard the evidence produced at trial does not contain sufficient evidence that a robbery occurred. Now pursuant to insufficient evidence, there are two grounds cited by the State relative to this case that could make it a robbery. First is the supposed "theft" of Gregory's phone. Second is the theft of Gregory's cash. When these two instances are examined, however, it is clear that at the time the phone was taken/smashed there was no theft offense being committed. And, at the time the cash was taken there was no threat of harm or possession of a weapon. As such, there is no concurrence of threat or harm/infliction of harm/possession of a weapon and a theft offense thereby defeating the convictions of theft.

---

[4] *Houston v. Lack*, 487 U.S. 266, 270 (1988).

**B. Ground Two**: Pursuant to the Sixth Amendment to the United States Constitution and Art. I, § 10 of the Ohio Constitution, a criminal defendant has a right to confront witnesses against him.

On this claim petitioner has procedurally defaulted his federal claims in state court, so habeas review of this claim is barred "unless petitioner can demonstrate cause for default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result on a fundamental miscarriage of justice." *Buell*, 274 F.3d. at 348 (quoting *Coleman*, 501 U.S. at 750); *Davie v. Mitchell*, 324 F. Supp. 2d 862, 870 (N.D. Ohio 2004), aff'd, 547 F.3d 297 (6th Ct. 2008). Cert denied, 588 U.S. 996 (2009).

Petitioner would now like to demonstrate to this court that the cause for default. Petitioner trial counsel was ineffective for not exercising Petitioner Sixth Amendment right to confront Mr. Tracey Smelly about the alleged crime he witness. Appeal counsel was also ineffective for not challenging this specific issue instead appeal counsel argued the conviction of intimidation of a witness was based on insufficient evidence as the State offered no proof that a criminal action was pending at the time of the alleged threat or that threat was made and /or attempted. If petitioner trial counsel would of exercised the care and skill of a competent attorney he would have called Mr. Tracey Smelley as a witness and, or had all evidence suppressed that supported Mr. Tracey Smelley to this alleged crime.

In result of this error by trial counsel, the Petitioner was serious prejudice, by Melinda Gregory testimony regarding intimidation of a witness. Tracey Smelley, which the prosecutor amended prior to trial to put Mr. Tracey Smelley on the scene of the alleged crime. The Sixth Amendment guarantee the Petitioner right to confront witness against him. Petitioner's trial counsel strip that right away from petitioner by failing to call, or suppress the evidence of Tracey Smelley as a witness to this alleged crime. Which prosecutor used against the Petitioner, therefore, a failure for this Honorable Court to not recognize petitioner's Sixth Amendment right to the United States Constitution and Art. I 10, of the Ohio Constitution that this specific, and guaranteed right was violated and the violation serious prejudice the Petitioner did and will result in a fundamental miscarriage of justice.

ECF Doc. 1 at 10-13. Warden Wainwright filed an answer and return of writ on January 3, 2019 (ECF Doc. 8) in which he argues that Parker procedurally defaulted his Ground One sufficiency-of-the-evidence claim because he did not present it through one complete round of appeals in the Ohio courts. ECF Doc. 8 at 17. The warden acknowledges Parker raised his Ground One claim on direct appeal to the Ohio Court of Appeals, but contends Parker abandoned that claim in his

Ohio Supreme Court memorandum in support of jurisdiction.  The warden argues Parker essentially converted his Ground One claim into a challenge to the effectiveness of his trial counsel when he asserted to the Supreme Court of Ohio, ". . . defense counsel ineffectively allowed a breakdown of the adversarial testing process by and through allowing Appellant's convictions for Robbery as contained in counts 4 & 5, were based on insufficient evidence . . . ." ECF Doc. 8 at 17; ECF Doc. 8-1 at 109.  The warden further argues that Parker has not shown cause or prejudice to excuse his procedural default and has not made a showing that a manifest injustice would occur if this court did not consider the merits of Parker's Ground One claim.  In addition, the warden argues that to the extent Parker characterizes his Ground One claim as a contention that his convictions were against the manifest weight of the evidence, such a claim raises only a state law issue that is not cognizable in a federal habeas case.  Finally, in regard to the Ground One claim, Warden Wainwright argues that the claim lacks merit if it is viewed as a non-defaulted evidence sufficiency claim.

The warden argues that Parker's Ground Two confrontation clause claim was procedurally defaulted, as Parker concedes.  The warden contends, contrary to Parker's argument, that he has not overcome the default by showing cause and prejudice for his failure to raise the issue in the Ohio courts and he has not shown that a manifest injustice would occur if this did not reach the merits of the Ground Two claim.  Finally, the warden argues that the Confrontation Clause claim would fail on the merits if evaluated on that basis.

Parker filed a traverse to the return of writ on January 18, 2019.  ECF Doc. 9.  In regard to the alleged procedural default of his Ground One claim, Parker argues that he did present the same evidence sufficiency issue to the Supreme Court of Ohio that he raised in the Ohio Court of Appeals, directing this court's attention to his second proposition of law to the Supreme Court.

9

ECF Doc. 9 at 2.  He further argues that the Ohio Supreme Court did not base its decision not to accept jurisdiction over Parker's appeal on the ground that a procedural default had occurred. Mostly, however, Parker's Ground One claim argument focuses on his interpretation of the mismatch between the facts of the case and his interpretation of how Ohio law requires the elements of the robbery charges he was convicted of to be proven.[5]

Parker argues that his Ground Two claim may be considered because he has shown that the procedural default of the claim may be excused due to the ineffective assistance of trial and appellate counsel, neither of whom challenged the state's attempt to prove Parker intimidated a witness without actually calling that witness to testify.  Parker contends this situation violated his Sixth Amendment right to confront witnesses.  While acknowledging he never raised an ineffective assistance of appellate counsel claim before the Ohio courts, Parker volunteers to have his petition dismissed while he files an Ohio App. R. 26(B) application to reopen his direct appeal.  Parker's final point rests upon his contention that the state could not prove an intimidation of witness charge involving witness Tracey Smelley unless Smelley was called to testify; absent such testimony, Parker contends, he could not be convicted of that charge.

---

[5] Parker's traverse also argues that the evidence submitted in the state's case in chief should not be considered by this court because it was never properly authenticated before being admitted in evidence by the trial court.  Parker never raised this issue in his habeas petition or in any of his Ohio court proceedings.  This raises a host of problems.  First, the admission of evidence typically involves only state law issues that are noncognizable in a federal habeas case.  Second, even if there were a federal issue implicated by the admission of unauthenticated documents, Parker neither fairly presented or exhausted the issue in state court.  Because he has no remaining avenue for a state proceeding the unexhausted issue would be procedurally defaulted, and Parker has offered no cause and prejudice argument to excuse that default.  Finally, a new issue raised in January 2019 would be barred by the AEDPA one-year statute of limitations, unless the court granted leave to amend the petition pursuant to Fed. R. Civ. P. 15 and concluded that the amendment should relate-back to the original petition filing date.  Parker did not file a motion to amend his petition.  The Sixth Circuit has held that a petitioner forfeits any argument not presented in the petition, even when he raises it for the first time in his traverse.  *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the . . . argument was first presented in [petitioner's] traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it.").  For all of these reasons, I conclude it is unnecessary to address Parker's newly-injected evidence authenticity claim.

IV.     **Law and Analysis**

A.     **Facts**

We begin analysis of Parker's petition with a recitation of the factual findings of the Ohio

courts.  The Ohio Court of Appeals summarized the facts pertinent to Parker's Ground One claim

in its disposition of Parker's challenge to the sufficiency of the evidence to convict him at trial:

{¶ 7}   The following pertinent evidence was adduced at trial. Melinda Gregory
testified that in May 2015 she was a bar manager at Tiffany's Dolls; she met
Parker while she was employed there; and the two had been romantically involved
since November 2014.

{¶ 8}   On May 3, 2015, Gregory and Parker exchanged several text messages in
which Gregory ended their relationship, and told Parker to stay away from where
she worked and lived. Gregory stated she repeatedly told Parker to leave her alone
through the text messages. Gregory said she ended their relationship because
women associated with Parker had been harassing her. On cross-examination, she
read several other texts she sent to him about his alleged relationships with other
women and conceded she was hurt and upset over his infidelity and dishonesty.

{¶ 9}   Later that evening, Gregory was at her apartment with her roommate Kay
Lee Izenour and friend Tracey Smelley. Around 3:40 a.m., Gregory heard a light
tapping outside her bedroom window. Gregory crawled on the floor and peaked
through the curtains and saw Parker standing outside her bedroom window.
Gregory admitted on cross-examination that in the past when Parker knew she
was sleeping and wanted to wake her up to tell her he was there; he would
communicate this by tapping on her bedroom window.

{¶ 10} A few minutes later, Gregory heard knocking at her front door, but refused
to answer it. She then heard louder tapping on her bedroom window. Parker then
proceeded to knock on the front door again: "he kept beating harder and harder on
the door. And he was yelling, 'Open the door. Open the door.'" Gregory, Izenour,
and Smelley all hid in the spare bedroom.

{¶ 11} Gregory stated she was scared because Parker told her he was previously
incarcerated in a maximum security prison for nine years for felonious assault. He
also told her about other violent things he had done in the past. Gregory stated
that as she hid inside her apartment: "I was just really in fear. I just really didn't
know what to expect from him * * *." She said she had never personally seen him
become violent in the past. She said Izenour and Smelley also appeared terrified.

{¶ 12} After about 20-30 minutes, Parker stopped knocking. Gregory believed he
had left the premises because she did not see him or his truck outside. Gregory

11

and Izenour then went outside to ensure that Parker was gone—they looked for him in the hallways and outside, before getting into Gregory's vehicle. Smelley remained inside. Gregory then phoned Smelley and told him to come outside because Parker had left.

{¶ 13}  As Gregory was backing her vehicle up, Parker appeared suddenly and started beating on her vehicle's window "with a Michael Myers knife in his hand" Parker was screaming for her to put the window down. Gregory was scared and refused to comply, she thought he was going to kill her.

{¶ 14}  Parker then stabbed the driver's side tire of Gregory's vehicle, causing it to go flat and disabling the vehicle. Parker ran back inside Gregory's apartment building towards Smelley. Izenour followed Parker inside to try to "diffuse the situation." Gregory remained outside. Gregory's testimony about the incident up to this point was corroborated by Izenour's.

{¶ 15}  Izenour stated that when she followed Parker inside the building, she observed Parker confronting Smelley in the building's common hallway. Parker pointed a knife at Smelley's chest; cornered "him up against the wall in the hallway of the apartment[,]" and demanded that Smelley empty his pockets. Izenour stated that she spoke to Parker and attempted to diffuse the situation; Parker eventually ran back outside.

{¶ 16}  According to Gregory, Smelley and Izenour also came back outside, as Parker began yelling at Gregory, who was now standing outside her vehicle looking at the damage to her tire. Parker still had the knife in his hand during this argument; he was accusing Gregory of a sexual relationship with Smelley, which she strongly denied. Gregory said she was terrified.

{¶ 17}  When Gregory threatened to call the police, Parker, while still holding the knife, punched Gregory in the face. Gregory then punched him back, which caused Parker to drop the knife and Gregory to drop her cell phone. Izenour began screaming, thinking that Parker had stabbed Gregory since the hand he used to punch her was the same hand holding the knife. Izenour attempted to slide the knife away from Parker once it was on the ground, but her shoe came off during the attempt. Parker regained possession of the knife. Gregory pushed Izenour out of the way while Parker attempted to stab Izenour. Gregory stated that she believed Parker would have been successful in stabbing Izenour had she not pushed her out of the way. At this point, Smelley was standing behind Gregory but not intervening in the situation.

{¶ 18}  Gregory then tried to get her cell phone to call 911, but Parker grabbed the phone from her. He then smashed it several times on the ground until it broke; cash that Gregory had in her phone case fell out in the process. Parker picked up the money and fled the scene; he was subsequently apprehended in West Virginia by Boardman Police Officer Glenn Riddle who is assigned to the U.S. Marshal's

12

fugitive task force. Izenour's testimony about what occurred in the parking lot this second time also corroborated Gregory's testimony.

{¶ 19}  Around 4:13 a.m., Ambrosia Eddinger, Gregory's neighbor, testified she was awakened by an argument outside in the parking lot. Eddinger stated she heard Gregory screaming, and observed Parker attempting to get Gregory's cell phone. Eddinger observed Parker throw Gregory's phone to the ground several times until it broke. Eddinger saw Izenour standing next to Gregory's Jeep and Smelley off to the right of the parking lot as this was happening. She heard Gregory yelling for someone to call the police, so Eddinger did. When police responded to the scene that night, Gregory and Izenour told them what happened but were afraid to give written statements.

{¶ 20}  Police Officer Nicholas Newland was one of the responding officers, arriving at 4:28 a.m. Gregory identified Parker as the suspect and told Officer Newland that she had been assaulted and Parker had slashed her tire. Officer Newland stated that everyone was upset and hysterical. Smelley told Officer Newland that Parker held a knife to him and told him to empty his pockets, and that as a result he gave Parker his cell phone.

{¶ 21}  On 8:36 p.m. that same day, Gregory said she sent Parker a text from a new cell phone confronting him about his conduct. She stated: "I hope you are happy hitting me, breaking my phone and slicing my tire and trying to kill me with a knife. * * *You did all of that for what? I should have really listened to what everyone said about you. You really need some help. Wish you the best. Please stay away from me. Of all people, I never thought you would do something like that."

{¶ 22}  Parker responded via text stating: "Really u know I never hit u silly tell your dude tracy [Smelley] he better not look for me cause one word I here anyone after Mr I know his bm n Campbell 280 his address." Detective-Patrolman Glenn Patton spoke with Gregory on May 6, 2015, and obtained a screen shot from Gregory's cell phone that captured this text message, which was admitted into evidence. Gregory testified she understood the abbreviation "bm" to refer to Smelley's "baby mama," and took it to be a threat to Smelley. Gregory said she told Smelley about the threat because she "was scared for him and his kids."

{¶ 23}  Det. Patton said his comparison of the cell phone company records for Parker's phone to the list of text messages from the phone that were provided by Ohio Bureau of Criminal Investigation revealed that the text message from Parker threatening Smelley had been deleted from Parker's phone.

{¶ 24}  Det. Patton said during the course of his investigation, Gregory told him she was fearful of Parker due to Parker's criminal history, which Parker had relayed to her. Over objection, a certified copy of the judgment entry for Parker's prior felonious assault conviction was admitted into evidence. Det. Patton also

13

corroborated that Gregory's phone was broken and her tire slashed. Later, Det. Patton also listened to a number of jail-house phone calls Parker made. He said Parker admitted to breaking Gregory's phone.

{¶ 25}  Gregory said she continued to text Parker for days after the incident. She told him she was no longer in Ohio, in an attempt to get him to leave her alone. She also began parking her car at the police station, wearing a wig as a disguise, and getting a ride to work to feel safer. About 10 days after the incident, on May 15, 2015, Gregory testified that Parker sent her a text stating: "All I did was break your fucking phone."

{¶ 26}  Michael Dodson a computer scientific specialist employed with BCI analyzed Parker's cell phone and extracted several text messages, images, videos, and the device's history. He said that due to the nature of the device he was unable to recover texts that Parker had deleted. But he confirmed that a text sent by Parker at 8:36 p.m. on May 4, 2015—as shown in the screenshot from Gregory's phone—was missing from Parker's phone. Parker's phone showed two back-to-back text messages from Gregory, with no intervening message from Parker.

{¶ 27}  After the incident, Gregory took her vehicle to Flynn's Tire. Daniel Boyle, a technician there, testified that he repaired Gregory's tire. He said the tire appeared to be slashed on its sidewall.

{¶ 28}  The State did not call Smelley to testify, and Parker elected not to present evidence in his defense.

These state court factual findings are presumed correct unless Parker rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

### B.    AEDPA Review

Parker's petition for writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Murphy v. Ohio,* 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau,* 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor,* 529 U.S. 420, 436

(2000)).  The Act "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

 "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that

15

the result and reasoning are consistent with Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).  With these governing principles in mind, we turn to the analysis of Parker's two claims for relief and Warden Wainwright's arguments in opposition to those claims.

### C.      Ground One – Evidence Insufficiency

#### 1.      Procedural Default

Warden Wainwright argues that Parker's Ground One claim was procedurally defaulted because he failed to raise it in his appeal to the Ohio Supreme Court.  In essence, the warden is arguing that Parker failed to fairly present his evidence sufficiency claim through one full round of appeals; this is more appropriately characterized as a failure to exhaust.  Title 28 U.S.C. § 2254(c) requires state prisoners to give the state courts a *fair* opportunity to rule on their federal law claims.  This is because state courts, like federal courts, are obliged to enforce federal law.  Thus, when a state prisoner alleges that his state court conviction violates federal law, the state courts should have the first opportunity to review his claim and provide any necessary relief.  *Rose v. Lundy*, 455 U.S. 509, 515-516 (1982).  "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

To provide state courts the necessary "opportunity," petitioners must "fairly present" federal constitutional claims "in each appropriate state court (including a state supreme court with powers of discretionary review)," before seeking relief in the federal courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "A habeas petitioner's submission of a new claim to the state's highest court on discretionary review is not a fair presentation to the state's courts." *Hruby v. Wilson*, 494 F. App'x 514, 517 (6th Cir. 2012) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). When a petitioner presents his claim only in the state court of appeals but not the state supreme court or only in the state supreme court but not the court of appeals, he has not satisfied either the exhaustion requirement or the fair presentation requirement. The Sixth Circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which is it later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004). When a petitioner fails to exhaust his state appellate-review remedies but is precluded from doing so by the time he files his federal habeas petition, the claims can be said to be procedurally defaulted. *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009); *Reeves v. Campbell*, No. 16-1229, 2016 U.S. App. LEXIS 23866, *6 (6th Cir., July 19, 2016).

It is mandatory that we first determine whether something about Parker's interactions with the Ohio courts makes him ineligible for habeas relief. *Gerth v. Warden, Allen Correctional Inst*, 938 F.3d 821, 826 (6th Cir. 2019). The warden argues that Parker changed the theory of his Ground One claim from how he described it in the Ohio Court of Appeals to how he presented it to the Supreme Court of Ohio. If he did, that poses an exhaustion problem because it would mean that he only gave the court of appeals an opportunity to cure a federal constitutional issue, but he didn't give the supreme court that same opportunity. It is not hard to

see why the warden makes that argument.  In the state court of appeals, Parker, through counsel, asserted the following as his first two assignments of error:

    I.   <u>Appellant's convictions for robbery as contained in counts 4 and 5 were based on insufficient evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflicted harm thereby requiring reversal.</u>

    II.   <u>Appellant's convictions for robbery as contained in counts 4 and 5 were against the manifest weight of the evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflicted harm thereby requiring reversal.</u>

Parker's first two proposed propositions of law in his Ohio Supreme Court memorandum in support of jurisdiction were identical in some parts but completely new in others:

    <u>[Proposed] Proposition of Law No. 1</u>:  *Whether, Appellant's constitutional rights of the 4th, 5th, 6th, 8th & 14th Sec.1 Amendment Clauses were denied, deprived and/or prejudiced. Where defense counsel ineffectively allowed a breakdown in the adversarial testing process by and through allowing* <u>Appellant's convictions for Robbery as contained in counts 4 & 5, were based an insufficient evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflict harm thereby requiring reversal.</u>

    <u>[Proposed] Proposition of Law No. 2</u>:  *Whether, Appellant's constitutional rights of the 4th, 5th, 6th, 8th & 14th Sec. l Amendment Clauses were denied, deprived and/or prejudiced. Where defense counsel ineffectively allowed a breakdown in the adversarial testing process by and through allowing* <u>Appellant's convictions for Robbery as contained in counts 4 & 5, were against the manifest weight of the evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflict harm thereby requiring reversal.</u>

The underlined portions of these claims are identical in the two court presentations.  And the italicized language in the supreme court statements is entirely new.

      The new language Parker used in his supreme court appeal gives support to the warden's argument that Parker had changed his Ground One from an evidence sufficiency challenge to an effective assistance of counsel challenge.  But the underlined language Parker used in both the

18

court of appeals and supreme court supports the opposite conclusion.  I find that Parker's assignments of error and proposed supreme court propositions of law create ambiguity concerning what he was arguing.  I have examined Parker's court of appeals brief and his supreme court memorandum in support of jurisdiction to determine how Parker actually argued these statements of his position to determine whether this ambiguity can be resolved.

Parker's court of appeals brief made no argument that his trial counsel was ineffective. Instead, he argued that the state's case was insufficient because his seizure and damaging of the victim's phone was not a "theft" as defined under Ohio law.  And he used this predicate argument to further argue that he could not have committed a robbery absent a theft offense.  He further argued that the state's proof of a separate robbery charge – one requiring defendant to commit a theft offense while using force against a victim – was insufficient because he no longer possessed a knife when he seized the victim's cash when it fell out of her damaged phone.  And Parker argued that because there was no proof that he was aware the victim possessed cash at the moment he struck her, the state's proof on the second robbery charge was insufficient.  ECF Doc. 8-1 at 29-30.  Parker made these *exact same arguments* in his supreme court memorandum in support of jurisdiction in the substantive portion of his brief in which he argued concerning his proposed propositions of law.  ECF Doc. 8-1 at 117-119.  However, in the portion of Parker's supreme court memorandum in which he argued why the case presented issues of "public great general interest" involving a "substantial constitutional question," he made several statements indicating that his trial counsel had been ineffective, to his detriment.  ECF Doc. 8-1 at 113.

Taking the content of Parker's court of appeals brief and his supreme court memorandum together, we can hardly conclude that Parker "abandoned" his evidence sufficiency assignments of error, as Warden Wainwright has argued, when he presented the identical arguments in the

substantive section of his supreme court memorandum.  To say it a different way, it seems quite

plain that the Supreme Court of Ohio would have understood that Parker was arguing his

convictions were not supported by sufficient evidence.  I conclude, therefore, that even though

Parker presented *additional* statements to the Ohio Supreme Court concerning the effectiveness

of his trial counsel (issues which he could not properly raise there without first having raised

them in the Ohio Court of Appeals[6]) he nevertheless exhausted the evidence sufficiency claim he

now asserts in his Ground One claim for relief.

### 2.     Merits

Parker's Ground One insufficient evidence claim may be reviewed on the merits.

*Jackson v. Virginia,* 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re Winship,*

397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,*

894 F.2d 792, 794 (6th Cir. 1990) (*en banc*).  States have the power to determine the elements of

criminal offenses, *see Engle v. Isaac,* 456 U.S. 107, 119-120 (1982); *Jackson,* 443 U.S. at 324,

but the Due Process Clause prohibits states from convicting "without proving the elements of

that crime beyond a reasonable doubt," *Fiore v. White,* 531 U.S. 225, 228-229 (2001).  Thus,

when a habeas petitioner challenges the sufficiency of the evidence relied on to convict him, he

essentially argues that there was some element of required proof missing.  Absent evidence on

every required element of a charge a conviction may not stand.

In *Jackson* the Supreme Court held that, when reviewing the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the

---

[6] Parker did raise an ineffective assistance of counsel claim on his direct appeal to the Ohio Court of
Appeals, but it did not focus on his counsel's alleged ineffectiveness for "allowing [Parker's] conviction
for Robbery as contained in counts 4 & 5" to occur in the absence of sufficient evidence or against the
manifest weight of the evidence.  Instead, he argued his trial counsel was ineffective for other alleged
deficiencies: for failing to argue for the merger of his disrupting public services and/or his menacing by
stalking convictions with his robbery convictions.  ECF Doc. 8-1 at 21.

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson,* 443 U.S. at 319.  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence decision, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins,* 506 U.S. 390, 402 (1993).  Here, Parker contends that the state did not prove that he committed a theft offense, a required element for a robbery conviction; or, in the alternative, he alleges that the state did not prove that he used force or a weapon to commit the second type of robbery of which the jury found him guilty.

Because both *Jackson* and AEDPA apply to Parker's evidence sufficiency claim, federal habeas review requires deference at two levels.  "First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis.  First, we must ask whether the evidence itself was sufficient to convict under *Jackson*.  The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'"  *Davis,* 658 F.3d at 534 (quoting *United States v. Oros,* 578 F.3d 703, 710 (7th Cir. 2009)).

The analysis of Parker's Ground One claim must determine whether the state produced evidence which, if believed, established each element of the Count 4 and Count 5 robbery

charges beyond a reasonable doubt.  The Ohio Court of Appeals described the elements for those

charges and the evidence in the trial court record supporting them:

> {¶ 34}  Count 4 concerns robbery under R.C. 2911.02(A)(1), which provides: "No
> person, in attempting or committing a theft offense or in fleeing immediately after
> the attempt or offense, shall do any of the following: * * * Have a deadly weapon
> on or about the offender's person or under the offender's control[.]" Count 5
> concerns robbery under R.C. 2911.02(A)(2), which provides: "No person, in
> attempting or committing a theft offense or in fleeing immediately after the
> attempt or offense, shall do any of the following: * * * Inflict, attempt to inflict,
> or threaten to inflict physical harm on another[.]"

> {¶ 35}  Parker argues that there was insufficient evidence that a theft offense was
> committed. However, Gregory's testimony alone establishes two separate theft
> offenses. While in possession of a knife, and after punching Gregory in the face,
> Parker grabbed Gregory's cell phone from her. He subsequently began to smash
> the cell phone. When Gregory's cash came out of the cell phone case, he grabbed
> the money and fled. Based upon this evidence, any rational trier of fact could have
> found Parker guilty of robbery; he committed the requisite theft offenses (cell
> phone and cash) while in possession of a deadly weapon—a knife—and after
> threatening Gregory and punching her in the face.

*State v. Parker*, 2017-Ohio-4382, ¶¶ 34-35; ECF Doc. 8-1 at 94.  Parker argues two main points:

(1) he did not take his victim's cell phone for the purpose of stealing it permanently, but instead

took it in order to damage it so that his victim could not make calls (ECF Doc. 9 at 3); and (2)

while he admits he used force to punch his victim in the face after she first struck him (and after

he had dropped his knife), he did not do so in order to rob her; he claims to have been unaware

she even possessed the cash he took until after he hit her, the phone fell to the ground, and the

cash popped out (ECF Doc. 9 at 4).  Essential to both of Parker's arguments is the issue of the

sequence in which the elements of the crime must occur.

Notably, Parker does not assert that the Ohio Court of Appeals misstated Ohio law; he

concedes the wording of the statute.  And Parker does not disagree with some key facts that were

in evidence at trial: (1) just prior to taking the victim's phone, he had possession of a knife – a

deadly weapon that he'd already used to disable the victim's car; (2) he punched the victim in the

face[7]; (3) he took the victim's phone from her; (4) he did so to damage or disable the phone; and (5) he immediately took the victim's cash and fled the scene.  What Parker attempts to do is parse these facts in a light most favorable to *him*.  In conducting an evidence sufficiency analysis, however, we are required to do the exact opposite: to examine the facts in the light most favorable *to the prosecution*.

Parker says he took the phone to damage but not steal it, but that distinction does not help his argument.  The Ohio robbery statute requires that a "theft offense" be committed or attempted.  Ohio Rev. Code. § 2911.02.  Here, Count 4 and Count 5 of the indictment indicated that the theft offense element of the robbery charge was "as defined in Section 2913.01 of the Revised Code."  ECF Doc. 8-1 at 7.  The trial court defined the term "theft offense" in its jury instructions: "Before you can find that the defendant was committing or attempting to commit a theft offense, you must find beyond a reasonable doubt that the defendant, with purpose to deprive the owner of his or her property, knowingly obtained or exerted control over the property without the consent of the owner . . .."  ECF Doc. 8-3 at 186-187.  The trial court did not define the term "deprive" in its jury instructions.  To bolster his argument, Parker now cites the italicized part of the three-part Ohio Revised Code's definition of "deprive" in Ohio Rev. Code § 2913.01(C):

(C) "Deprive" means to do any of the following:

(1) *Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration*;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

---

[7] Parker says he punched the victim in response to her having first punched him.  The trial witnesses all said Parker struck the victim in the face while in possession of his knife after which she struck him, causing him to drop the knife.

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

Parker contends he did not commit a theft offense regarding the victim's cell phone because he did not intend to permanently withhold it from her or for a period that appropriated a substantial part of the phone's value.

Parker's argument badly misses the mark.  Even if his version of the facts were accepted at face value – that he merely intended to make the phone unusable rather than to keep it permanently – that hardly means he didn't deprive the victim of it.  Even in his view, Parker acknowledges that if he were to have returned the phone, the victim would not have been getting a usable phone back.  She would have recovered only a nonfunctional collection of plastic, metal, silicon board, glass and electronic parts -- a shattered phone.  He would have permanently deprived her of the usable communication device that he took.  And he has not even disputed that he made off with the victim's cash, thereby permanently depriving her of that property as well.

Luckily, as mentioned above, we are not required to see whether Parker's analysis of whether he committed a theft offense holds water; I have included it merely to reveal that Parker's own admissions doom his Ground One claim.

Our analysis is quite simple.  Two questions must be answered.  Question one: could any rational juror have concluded beyond a reasonable doubt that Parker, while seizing the victim's phone, had a deadly weapon on his person or under his control?  The answer is an unequivocal yes.  The fact that he dropped the knife does not mean it suddenly was no longer under his control.  In fact, when Kay Lee Izenour attempted to sweep the phone away from him with her foot, Parker seized it and thrusted the knife toward Izenour's chest.  ECF Doc. 8-3 at 23, trial transcript page 241.  Question two: could any rational juror have concluded beyond a reasonable

24

doubt that Parker, in attempting or committing a theft offense, inflicted or threatened to inflict physical harm upon his victim?  Without a doubt the answer is yes.  Parker slugged the victim in the face (and had moments earlier slashed her car tire and accosted her with a knife before immobilizing her phone).  He stole the victim's cash when it fell from her phone case.  Nothing in the robbery statute required the state to prove that Parker knew his victim had cash before he hit her.  Indeed, Parker's seizure of the phone at or about the time he punched the victim was enough to prove the Count 5 robbery charge.

By making the foregoing findings, we need go no further in order to conclude that Parker's Ground One claim fails on the merits.  Even if we performed the second part of the *Jackson* analysis, the conclusion is even more direct.  We would be required to apply AEDPA deference first to the jury's verdicts and second to the state court of appeals' determination that there was sufficient evidence in the record to support the Count 4 and Count 5 robbery convictions.  In effect, we must ask whether the state court of appeals' determination – that the evidence was sufficient to permit a rational juror to find Parker guilty beyond a reasonable doubt – was "objectively unreasonable."  *Stewart v. Wolfenbarger*, 595 F.3d at 653.  The Ohio Court of Appeals disposed of Parker's evidence insufficiency claim in a single paragraph and rightly so.  There is no basis upon which we could conclude that the state court of appeals decision was unreasonable at all, objectively or otherwise. [8]

---

[8] By not mentioning Parker's argument that the state must prove that the elements of robbery occurred simultaneously or his reliance upon *State v. Griggs*, Eighth Dist. Cuyahoga No. 2012-Ohio-1837 (April 26, 2012), the Ohio Court of Appeals rejected that argument.  It's easy to see why.  *Griggs* is factually distinguishable.  There, the state failed to prove a "force" robbery under Ohio Rev. Code § 2911.02(A)(3) when the defendant "snatched" a cell phone from the victim's hand; the court found "snatching" not to be the force required under the robbery statute when the victim admitted she was not in fear of the defendant.  The court also rejected the state's argument that the defendant's alleged sexual groping moments before he seized the phone proved the necessary force.  The *Griggs* court ruled that the elements of robbery had to occur simultaneously in order to prove the charge; and the earlier sexual imposition would not suffice.  *Griggs* at ¶ 11.  Parker's case is vastly different.  First, he used *actual force* when he punched the victim

I recommend that Parker's Ground One claim, to the extent it asserts an evidence insufficiency, argument be dismissed for lack of merit.

### D.      Ground One – Manifest Weight of the Evidence

Parker's Ground One claim combines the arguments that his Count 4 and Count 5 convictions were not supported by sufficient evidence and were also against the manifest weight of the evidence.  Parker's argument in support of his manifest weight of the evidence claim is embodied in and identical to his insufficient evidence claim: that the state failed to prove the robbery allegation in Count 4 and Count 5 because (i) there was no theft of his victim's phone and (ii) he did not act with the requisite intent or force to commit robbery when he took her cash.  Because Parker used virtually the same language to assert these claims in both the Ohio Court of Appeals and the Supreme Court of Ohio, I conclude, for the reasons stated in section (C)(1) above[9] that he has exhausted the manifest weight of the evidence claim by fairly presenting it to the Ohio courts for one full round of appeals.

There is, however, a fundamental reason why this court cannot review Parker's manifest weight of the evidence claim.  To the extent that claims asserted in federal habeas petitions allege state law violations, they are not cognizable on federal habeas review and should be dismissed on that basis.  An argument that a conviction was against the manifest weight of evidence is a state-law argument.  *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007); *Schwartzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193 *8 (6th Cir. 2007) (unpublished) ("A manifest-weight-of-the-evidence claim in Ohio is a state-law claim that is

---

in the face just before taking her phone.  Second, he *threatened force* by having a knife in his possession of under his control immediately before punching the victim and grabbing her phone.  Parker's conduct did occur simultaneously.  The Ohio Court of Appeals' handling of this issue was neither in contrary to nor an unreasonable application of *Jackson.*

[9] See discussion at pages 20-21 *supra.*

similar to but ultimately different from a federal constitutional claim that the evidence was insufficient to support a conviction.").  "It is not the province of a federal habeas court to reexamine state-court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

Parker nevertheless argues that his manifest weight of the evidence claim is cognizable, "because it result[ed] in a proceeding that is fundamentally unfair and thus violated the due process clause.  The due process clause was violated under RC 2911.02, the elements of robbery must occur simultaneously in order for the offense to occur."  ECF Doc. 9 at 2-3.  It is true that state court rulings on issues of state law may "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  But they must be "so egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised where "the action

27

complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Courts, therefore, "'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

The Ohio Court of Appeals summarily disposed of Parker's manifest weight of the evidence claim as follows:

> {¶ 36} Turning to manifest weight, the jury reasonably believed Gregory's version of events. It was supported by the testimony of Izenour, Eddinger, and the responding officer. Accordingly, the jury did not lose its way in convicting Parker of robbery under either subsection.

*State v. Parker*, 2017-Ohio-4382, ¶ 36; ECF Doc. 8-1 at 94-95.  Essentially, the court said Parker's manifest weight claim failed because he did not show that the jury "lost its way" in choosing to believe the state (and victim's) version of what happened instead of what Parker argued.  A case getting decided on a credibility determination is hardly the sort of proceeding that violates fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.  If it were, a majority of the criminal trials would be subject to later second guessing.

I recommend that the portion of Parker's Ground One claim in which he argues that his robbery convictions were against the manifest weight of the evidence be dismissed on the ground that it is noncognizable.

### E.      Ground Two – Confrontation Clause

Parker's Ground Two claim contends his rights under the Confrontation Clause of the Sixth Amendment were violated when the state failed to call witness Tracey Smelley to testify at the trial.  Count 7 of the superseding indictment charged that Parker violated Ohio Rev. Code

§ 2921.04(B)(2)(d) by knowingly and by force or by unlawful threat of harm to Tracey Smelley attempted to influence, hinder or intimidate Smelley, a witness to a criminal act by reason of his being a witness to that act.  ECF Doc. 81- at 8.  Parker argues, and the state does not contest, that Smelley did not testify at the trial even though he apparently came to the courthouse in response to the subpoena served upon him.  Parker did not call Smelley in his defense case.  Despite Smelley not being called to testify, the jury convicted Parker of intimidation of a witness.

### 1.    Procedural Default

Parker never raised his Ground Two claim in the Ohio courts.  As a result, he neither fairly presented nor exhausted that claim.  Parker admits this claim has been procedurally defaulted.  ECF Doc. 1 at 11; ECF Doc. 9 at 7.  Because Parker admits his procedural default of his Ground Two claim, I shall not include a lengthy description of the applicable law.

We must decide for ourselves whether there was a procedural default.  "Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court."  *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)).  "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court."  *Gerth*, 938 F.3d at 826-827; 28 U.S.C. § 2254(b)(1)(A).  A petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.  *Engle v. Isaac*, 456 U.S. 107, 125 n.28, 102

S. Ct. 1558, 71 L. Ed. 2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. at 731-2.  This type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n.28.  When state court remedies are no longer available because a petitioner has failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*

Parker has no remaining Ohio remedies.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings when those claims could have been raised on direct appeal. *State v. Jackson*, 141 Ohio St.3d 171, 186, 2014-Ohio-3703, 23 N.E.3d 1023 (2014), citing *State v. Szefcyk*, 77 Ohio St.3d 93 (2007) and *State v. Perry*, 10 Ohio St.2d 175 (1967), syllabus ¶ 9.  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted. *Id.  See also Gray v. Netherland*, 518 U.S. 152, 161-62, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Parker readily acknowledges he did not raise his Ground Two claim in the Ohio courts. He could have raised it on direct appeal – because both Parker and his direct appeal counsel knew that Smelley was not called to testify.  And because the claim could have been raised on direct appeal, Parker was foreclosed from raising the claim in a post-conviction petition under Ohio Rev. Code. § 2953.21.  *Jackson*, 141 Ohio St.3d at 186.

As noted by Warden Wainwright, Parker also could have filed an application to reopen his direct appeal under Ohio App. R. 26(B), but the time limit to do so expired 90 days after the appellate judgment was journalized, unless Parker could show good cause for filing a delayed application to reopen.  Because Parker was aware of the fact that Smelley did not testify and is

30

presumed to know his rights under the Sixth Amendment, I conclude that filing a new Ohio App. R. 26(B) application at this late date would be futile.  This is particularly so inasmuch as Parker has neither explained to us why he never attempted a Rule 26(B) application, nor has attempted one in the fifteen months since the warden suggested the possibility of such a filing.  ECF Doc. 8 at 23.

I conclude Parker has procedurally defaulted his Ground Two claim, and that claim should be dismissed on that basis unless Parker can excuse the default by making a sufficient showing of cause and prejudice or show that a manifest injustice has occurred which an only be remedied if we consider his Ground Two claim.

### a.       Cause and Prejudice

Procedural default may be excused on two bases.  First, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) an external factor to the defense, which cannot be fairly attributed to him, *caused* him not to comply with the state procedural rule (here, that Parker should have raised his Ground Two claim on direct appeal or in an application to reopen the direct appeal under Ohio App. R. 26(B)); and (2) actual *prejudice* resulted from the alleged constitutional violation.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).

Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "A

31

fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"
*Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478,
496 (1986)). Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley
v. United States*, 523 U.S. 614, 623 (1998), and such a claim must be supported with "new
reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Parker makes a cause argument. His petition directly asserts: "Petitioner would now like
to demonstrate to this court the cause for default. Petitioner['s] trial counsel was ineffective for
not exercising Petitioner['s] Sixth Amendment right to confront Mr. Tracey Smelley about the
allege[d] crime to which he [was a] witness. Appeal counsel was also ineffective for not
challenging this specific issue . . .." ECF Doc. 1 at 12. Parker also argued his trial counsel could
have exercised his rights under the Sixth Amendment by calling Smelley in the defense case in
chief but failed to do so. *Id.*

Ineffective assistance of counsel in violation of the Sixth Amendment can constitute
cause to excuse a procedural default in some circumstances but not all. *Murray v. Carrier*, 477
U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). But the Supreme Court has long held that
a habeas petitioner who wishes to claim that ineffective assistance of counsel was the cause of a
procedural default must first argue he was the victim of ineffective assistance as an independent
claim in state court. *Id.* at 189. "If a petitioner could raise his ineffective assistance claim for the
first time on federal habeas in order to show cause for a procedural default, the federal habeas
court would find itself in the anomalous position of adjudicating an unexhausted constitutional
claim for which state court review might still be available." *Id.* The linking of the exhaustion
doctrine to the procedural default doctrine means that an unexhausted claim of ineffective
assistance of counsel can *itself* be procedurally defaulted if no available opportunities remain for

32

the claim to be presented in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). And, under certain circumstances, the petitioner may try to show cause and prejudice to excuse *that* default. *Id.*

Parker did not raise an ineffective assistance of trial counsel claim concerning his alleged loss of his Confrontation Clause rights on direct appeal; as a result, the claim is procedurally defaulted.[10] Further, Parker has never applied to reopen his direct appeal in order to assert a claim that he received ineffective assistance of appellate counsel on direct appeal. So that claim too is unexhausted; and, except for his right to bring a years-after-the-deadline App. R. 26(B) application to reopen, he cannot now raise that issue. Because these claims have never been asserted in state court, we can conclude that Parker's ineffective assistance of counsel arguments are insufficient to show cause for his failure to assert his Ground Two Confrontation Clause claim in state court. Further, Parker has not attempted to show cause for his failure to file an application to reopen within the original 90-day deadline contemplated by Ohio App. R. 26(B) nor for his failure to file a delayed application to reopen accompanied by a showing of good cause. He cannot, therefore, have the procedural default of his Ground Two claim excused on a cause and prejudice basis. And a finding that Parker cannot show cause relieves us of the obligation to determine whether has suffered any prejudice from the constitutional violation he alleges in the Ground Two claim. *McCleskey v. Zant*, 499 U.S. 467, 502, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Even if we were to consider any claim of prejudice from Parker's loss of a claimed right to confront Tracey Smelley, it can be readily determined that he suffered no prejudice. In reality,

---

[10] As noted in footnote 6 above, page 21 *supra*, Parker made a different, unrelated ineffective assistance claim on direct appeal, thereby confirming that he and his counsel examined that issue on direct appeal. Parker abandoned that ineffective assistance claim on his appeal to the Ohio Supreme Court.

Parker has no viable Confrontation Clause claim. The Sixth Circuit has capsulized the right of confrontation as follows:

> The Confrontation Clause of the Sixth Amendment "guarantees a criminal defendant the right 'to be confronted with the witnesses against him.'" *United States v. Johnson*, 581 F.3d 320, 324 (2009) (quoting U.S. Const. amend. VI). The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

*United States v. Collins*, 799 F.3d 554, 577 (6th Cir. 2015). *See also Miller v. Stagner*, 757 F.2d 988, 996 (9th Cir. 1985)) (holding that the Sixth Amendment right to confrontation cannot be invoked against non-witnesses); *Massey v. Chavez*, No. CV 11-8829, 2014 U.S. Dist. LEXIS 53247, *4 (C.D. Cal., March 12, 2014), adopted by, writ of habeas corpus denied by, 2014 U.S. Dist. LEXIS 53252 (C.D. Cal., Apr. 16, 2014) (no confrontation rights regarding confidential informant not called to testify at trial).

There is no dispute that neither the state nor the defense called Smelley to the witness stand. And the record is devoid of even a single of Smelley's statements coming in through the testimony of another witness. Thus, Smelley was not "a witness against" Parker, and no "testimonial statements of a witness who did not appear at trial" were admitted. Therefore, the Confrontation Clause was not implicated.

Parker's Confrontation Clause claim is premised on the notion that the government must call the person who was allegedly intimidated to give direct-evidence testimony about what happened in order to prove a witness intimidation charge. Unsurprisingly, Parker cites no law for this proposition. Here, the state attempted to prove the witness intimidation charge by circumstantial evidence. ECF Doc. 8-3 at 85. It did so by relying on a text message Parker sent to his victim several hours after the incident which stated: "Really u know I never hit u silly tell

your dude tracy he better not look for me cause one word I here anyone after Mr I know his bm in Campbell 280 his address." ECF Doc. 8-2 at 167.  The victim testified "bm" meant "baby's mom." Id.  The state also produced testimony from the victim that she interpreted the message as a threat to Tracey Smelley and/or his family members. ECF Doc. 8-2 at 205.  And it offered evidence that the victim told Tracey Smelley about the text message, "because I was scared for him and his kids." Id.  This testimony was also given in the context of other testimony from the victim that Parker used a knife in the incident; that Parker slashed the victim's tire; that Parker had confronted Smelley at knifepoint (ECF Doc. 8-3 at 18-19, trial transcript at 236-237); and that the victim and her friends were scared of Parker because of his violent criminal history.  The state offered evidence that the victim, Kay Lee Izenour and Smelley all declined to give written statements to the police for fear of Parker's retaliation. ECF Doc. 8-3 at 41-42; trial transcript at 259-260.  The state also offered evidence that Smelley came outside (after being threatened at knifepoint) and witnessed Parker hit the victim in the face while holding a knife, grab and smash her cell phone and take her money. ECF Doc. 8-2 at 158; and ECF Doc. 8-2 at 218-219.  All of that contextual testimony gave the jury a basis for accepting the state's argument that Parker intended his text message to be a threat.

To obtain a guilty verdict on the witness intimidation charge, the state was required to prove four things beyond a reasonable doubt: (i) that on or about May 4, 2015 Parker knowingly made an unlawful threat of harm to Tracey Smelley, (ii) to attempt to influence, intimidate or hinder Smelley, (iii) who was a witness to a criminal act, (iv) by reason of his being a witness to that act.  The state chose to prove the charge by Parker's own words in the form of his May 4 text message (State Exhibit 1) coupled with the fact that Smelley witnessed the incident.  The state was not required to call Smelley.

I find that even if Parker had shown cause for his failure to assert his Ground Two claim in state court (and even if his claimed cause – ineffective assistance of trial and appellate counsel was not itself defaulted), he cannot show he has been prejudiced by the alleged Confrontation Clause violation.  Even if it were assumed for the sake of analysis that the Confrontation Clause claim had merit – in other words, that error occurred because Tracey Smelley did not testify – I still cannot find prejudice, because on the record before the court there seems to be no likelihood that a different trial outcome would have resulted had the jury heard directly from Smelley. *Moore*, 74 F.3d at 691-92; *Mason*, 320 F.3d at 629 (6th Cir. 2003).  There was still evidence that Parker sent the text message implying a threat to Smelley upon which the state relied, that Parker's victim passed it on to Smelley and that the message was sent because Smelley was a witness to what occurred.  Parker may think that he could have gotten Smelley to admit he wasn't scared when he learned of the message, but the subjective view of the person threatened is not something the state was required to prove in order to establish the witness intimidation charge.  Thus, Parker is unable to show prejudice from the alleged constitutional error.[11]

### b. Actual Innocence

As noted above, the second avenue for having a procedural default overlooked could come into play if denying review of Parker's Ground Two claim would result in a "fundamental miscarriage of justice," because Parker has produced new, reliable evidence that he is actually innocent of the witness intimidation charge.  *Coleman*, 501 U.S. at 750; *Lundgren*, 440 F.3d at

---

[11] Parker's inability to show prejudice from the claimed error is also why Parker could not succeed on an ineffective assistance of counsel claim.  To establish such a claim, he would be required to show two things: (i) that his counsel's performance (at trial and/or on appeal) fell below an objective standard of reasonableness which (ii) caused him prejudice.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  Because Parker cannot show prejudice, his ineffective assistance claim would fail.  And because there was no Confrontation Clause violation, Parker also has no basis for a claim that his counsel's performance fell below an objective standard of reasonableness in the first place.

764; *Bousley v. United States*, 523 U.S. at 623 (1998); *Schlup*, 513 U.S. at 324. Parker has not produced any new evidence with his habeas petition. Instead, he merely implies that his text message to his which mentioned "your dude tracy" wasn't really a threatening message at all. This is not new evidence; it is reheated argument about old evidence. That is not enough to meet the fundamental miscarriage of justice standard announced in *Coleman*.

I recommend that the Court find that Parker has procedurally defaulted his Ground Two claim and has failed to show either cause and prejudice to excuse the default or a fundamental miscarriage of justice. The Ground Two claim should be dismissed on that basis.

### 2. Merits

Although Parker's unexcused procedural default of his Ground Two claim is not subject to reasonable disagreement, the Court may elect not to decide the claim on that basis and review it on the merits. Federal courts considering habeas petitions are permitted to address the merits before reaching a final conclusion on procedural default. *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003); *Bates v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *See also, Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) (noting that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law).

For the reasons discussed in the prior section, Parker's Ground Two Confrontation Clause claim fails on the merits because Tracey Smelley was never a witness against Parker, and one does not have a right to be confronted with persons who are non-witnesses. *Collins*, 799 F.3d at 577; *Miller*, 757 F.2d at 996; *Massey*, 2014 U.S. Dist. LEXIS 53247 at *4 (no confrontation rights regarding confidential informant not called to testify at trial). And none of the witnesses at trial testified concerning any of Smelley's out-of-court statements, testimonial or otherwise. There simply was no Confrontation Clause violation. The absence of any violation

37

would also doom any ineffective assistance of counsel claim that hinged upon an argument that counsel should have asserted a Confrontation Clause violation.  Therefore, should the Court determine to avoid the disposition of Parker's Ground Two claim on the basis of procedural default, the claim should be dismissed for lack of merit.

## V.      Certificate of Appealability

### A.      Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.      Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to

invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.  If the Court accepts my recommendations, Parker will not be able to show that the Court's rulings on his procedurally defaulted, meritless, and non-cognizable claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

## VI.    Recommendations

Because Parker's Ground One claim lacks merit and/or raises only a noncognizable manifest weight of the evidence claim, and because his Ground Two claim has been procedurally defaulted and lacks merit, I recommend that the Court DISMISS each claim and DENY Parker's petition for writ of habeas corpus.  Further, because the conclusions on these issues are no fairly debatable among jurists of reason, I recommend that Parker not be granted a certificate of appealability.

Dated: April 24, 2020

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).